J-S18033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.Z.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1424 MDA 2021 |

Appeal from the Decree Entered October 6, 2021
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  054-ADOPT-2021,
055-ADOPT-2021, CP-21-DP-000052-2020,
CP-21-DP-000053-2020

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.Z.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1425 MDA 2021 |

Appeal from the Decree Entered October 6, 2021
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s):  055-ADOPT-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: D.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.Z.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1550 MDA 2021 |

Appeal from the Order Entered November 23, 2021
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s):  CP-21-DP-000053-2020

| IN THE INTEREST OF: D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.Z.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1551 MDA 2021 |

Appeal from the Order Entered November 23, 2021
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-DP-000052-2020

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED JULY 22, 2022**

In these consolidated cases, S.Z.T. ("Mother") appeals from the October 6, 2021, decrees in the Court of Common Pleas of Cumberland County involuntarily terminating her rights to D.H., born in April 2016, and D.T., born in October 2017 (collectively, "Children").[1, 2] Mother also appeals from the November 23, 2021, orders changing Children's permanency goals from reunification to adoption. In addition, Mother's counsel ("Counsel") has filed a petition to withdraw and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978

---

[1] On October 6, 2021, the trial court also terminated the parental rights of D.H. ("Father"), the natural father of Children. Father did not file a notice of appeal and did not participate in the instant appeals.

[2] By decree entered on January 6, 2022, the orphans' court involuntarily terminated Mother's parental rights to her daughter, N.P. Mother filed a notice of appeal which is docketed at 142 MDA 2022, which we dispose of by separate memorandum.

A.2d 349 (Pa. 2009). After review, we grant the petition to withdraw, affirm the termination decrees, and dismiss the appeals from the goal change orders as moot.

We begin with an overview of the relevant facts and procedural history. Cumberland County Children and Youth Services ("CYS") became involved with the family in March 2020, after receiving a report that Children were residing with M.G., a cousin of Mother, and her paramour, B.G. N.T., 10/6/21, at 12. The report alleged that Children had been in the care of M.G. "on and off for most of [their] lives." *Id.* at 13. Further, the report alleged that M.G. was paying for Children's medical needs "out of pocket" which she could not sustain. *Id.* at 12-13.

M.G. testified that in October 2018, prior to CYS placing Children with her, Mother moved away. N.T., 10/6/21, at 55. At this time, Children were in the care of Father who was receiving monetary assistance from M.G. *Id.* At the end of October 2018, M.G. offered to care for Children until Father could obtain a job. *Id.* From October 2018, to the date of the termination hearing, other than a four-month period from December 2019, to March 2020, Children were in the care of M.G.[3] *Id.* at 56.

On June 11, 2020, the juvenile court adjudicated Children dependent. N.T., 10/6/21, at 12. CYS placed Children in the home of M.G. as a formal

---

[3] In December 2019, Mother took Children for Christmas, and said she would bring them back after the holiday. N.T., 10/6/21, at 56. However, Mother did not bring Children back until March 2020. *Id.* at 56.

kinship foster placement. CYS provided Mother with permanency goals: to obtain and maintain stable housing; to address parenting concerns; to maintain consistent contact with Children; to meet the needs of Children's medical, dental, vision, and education; and to address mental health concerns. *Id.* at 13-22.

On May 5, 2021, CYS filed petitions for goal changes to adoption. On September 24, 2021, CYS filed petitions for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). The orphans' court conducted an evidentiary hearing on all petitions on October 6, 2021, when Children were five years old and three years old, respectively. Legal counsel for Children was Damian DeStefano, Esquire, and Children's guardian *ad litem* was Tammi Blackburn, Esquire. CYS presented the testimony of Emily Normand, a parent educator at Alternative Behavior Consultants ("ABC"); Shannon Underwood, CYS caseworker; Christina Witmer, a caseworker at KidsPeace, who participated in ten sessions with D.H. regarding his ability to maturely communicate what he wants; and M.G. Mother, who was represented by Robert H. Hawn, Jr., Esquire, testified on her own behalf, and presented the testimony of her father.

By decrees dated October 6, 2021, and entered on October 8, 2021, the orphans' court involuntarily terminated Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). By orders dated October 6, 2021, and entered November 23, 2021, the court changed Children's permanency goals to adoption. On November 2, 2021, Mother filed

timely notices of appeal from the termination decrees along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On December 3, 2021, Mother filed timely notices of appeal from the goal change orders along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On December 10, 2021, this Court consolidated Mother's appeals *sua sponte*. The court filed a Rule 1925(a) opinion on March 22, 2022.

On April 16, 2022, Counsel filed a petition with this Court requesting to withdraw from representation and submitted a brief pursuant to *Anders* and *Santiago*. We begin by reviewing Counsel's request. *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (citation omitted); *see also In re V.E.*, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending the *Anders* procedure to appeals from involuntary termination decrees).

To withdraw pursuant to *Anders*, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted).

With respect to the third *Anders* requirement, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, the Pennsylvania Supreme Court has directed that *Anders* briefs must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

Instantly, Counsel filed petitions to withdraw certifying his review and determination that Mother's appeal is frivolous. Counsel also filed a brief which includes a summary of the procedural history and facts of the case with citations to the record, the issues raised by Mother that arguably support the appeal, and Counsel's assessment regarding why the appeal is frivolous with citations to relevant legal authority. Finally, Counsel attached to his petition a letter he sent to Mother pursuant to *Millisock*, 873 A.2d at 752. Accordingly, Counsel complied with the requirements of *Anders* and *Santiago*.

We next "conduct a review of the record to ascertain if on its face, there are non-frivolous issues that counsel, intentionally or not, missed or misstated." *Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

Counsel's *Anders* brief raises the following issues:

1. Did the [orphans'] court abuse its discretion or commit an error of law when it found, despite a lack of clear and convincing evidence, that the child's permanent placement goal of reunification was neither appropriate, nor feasible and ordered a goal change to adoption, thus contravening section 6351(f) of the Juvenile Act, 42 Pa.C.S. § 6351(f)?

2. Did the [orphans'] court abuse its discretion or commit an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of appellant's parental rights in her child, and when it failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus contravening sections 2511(a) and 2511(b) of the Adoption Act, 23 Pa.C.S. § 2511(a) & 2511(b)?

*Anders* Brief at 4 (suggested answers omitted).[4]

We will begin by analyzing the involuntary termination of Mother's parental rights. We review involuntary termination decrees for an abuse of discretion, which our Supreme Court has explained "is limited to a determination of whether the decree of the termination court is supported by competent evidence." *In re Adoption of C.M.*, 255 A.3d 343, 358 (Pa.

---

[4] Legal counsel for Children submitted a letter in this Court in support of affirming the decrees and orders and agreed with Counsel that the appeals are wholly frivolous. *See* Letter from Children's Counsel, April 21, 2022.

2021). When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. *Interest of S.K.L.R.*, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." *In re Adoption of L.A.K.*, 265 A.3d 580, 591 (Pa. 2021).

"[A]n abuse of discretion does not result merely because the reviewing court might have reached a different conclusion" or "the facts could support an opposite result." *In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012). Instead, an appellate court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* at 826. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings. *S.K.L.R.*, 256 A.3d at 1123-24.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental "right to make decisions concerning the care, custody, and control" of his or her child with the "child's essential needs for a parent's care, protection, and support." *C.M.*, 255 A.3d at 358. Termination of parental rights has "significant and permanent consequences for both the parent and child." *L.A.K.*, 265 A.3d at 591. As such, the law of this Commonwealth requires the moving party to establish the statutory

grounds by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *C.M.*, 255 A.3d at 358 (citation omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act. "Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination." *C.M.*, 255 A.3d at 359; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). In evaluating whether the petitioner proved grounds under Section 2511(a), the court must focus on the parent's conduct and avoid using a "balancing or best interest approach." *Interest of L.W.*, 267 A.3d 517, 524 n.6 (Pa. Super. 2021). If the court determines the petitioner established grounds for termination under Section 2511(a) by clear and convincing evidence, the court then must assess the petition under Section 2511(b), which focuses on the child's needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

The orphans' court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).[5]  Here, we analyze the court's

_____

[5] Although the orphans' court entered the decrees under 23 Pa.C.S. 2511(a)(5) and (8) as well, in its Rule 1925(a) opinion, the court reconsidered its ruling *sua sponte*. It determined Children were not removed from the care of a parent or under voluntary agreement with an agency and subsections (a)(5) and (a)(8) were inapplicable. We need not address this issue, as we need only agree with the court as to any one subsection of Section 2511(a),
*(Footnote Continued Next Page)*

termination decrees pursuant to Section 2511(a)(2) and (b), which provide as

follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

With regard to termination of parental rights pursuant to Section

2511(a)(2), we have indicated:

---

as well as Section 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met[:] (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal[,] as well as incapacity to perform parental duties." *In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (citations omitted). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *In re Adoption of M.A.B.*, 166 A.3d 434, 443 (Pa. Super. 2017) (*quoting In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011)). As such, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re S.C.*, 247 A.3d at 1105 (citation omitted).

In the instant case, the orphans' court determined that "Mother . . . essentially abandoned her [C]hildren." Orphans' Court Opinion, 3/22/22, at 6. The court continued: "Except for a four-month period ending in March 2020, Mother has consistently neglected her parental duties since October of 2018. That neglect caused [C]hildren to rely solely upon [M.G.] and her partner for their physical and emotional support." *Id.* The court also found

- 11 -

that "Mother had made virtually no progress toward remedying the causes of her parental neglect." *Id.*

In making this conclusion, the orphans' court relied on various facts, all of which are supported by the record. Primarily, Mother's contact with Children was sparse. During the dependency period, Mother was referred for visitation on June 26, 2020, November 5, 2020, May 7, 2021, and September 2, 2021. N.T., 10/6/21, at 15. According to the CYS caseworker, Underwood, Mother did not respond at all to the first two referrals. *Id.* On May 7, 2021, Mother was offered seven visits. *Id.* Underwood stated that "[Mother] attended one, she no-showed for four, and she cancelled two." *Id.* Finally, on September 2, 2021, Mother was offered three visits. *Id.* Mother attended one, no-showed for one, and cancelled one. *Id.* Over the course of the dependency, Mother only visited Children on two occasions, and went approximately one year from their placement before finally visiting. *Id.*

M.G. testified that, with her approval, Mother contacted Children intermittently *via* phone. *See* N.T., 10/6/21, at 61. The record does not reveal when this contact began, but it indicates that this contact ceased in the Spring of 2021. *Id.* at 17-18, 61-62. M.G. testified that she blocked Mother's number at that time because Mother threatened her. *Id.* at 62. M.G. stated that she told Mother if she wanted to speak to Children, she could reach out to M.G.'s mother. *Id.*

Additionally, the orphans' court appropriately found that Mother "did little to avail herself of" the services offered by CYS. Orphans' Court Opinion, 3/22/22, at 6-7. According to Underwood, CYS referred Mother for a parental assessment on three occasions. *See* N.T., 10/6/21, at 14. CYS first referred Mother for this assessment on July 16, 2020, but Mother did not respond. *Id.* On November 5, 2020, CYS referred Mother for the assessment again, but Mother did not respond. *Id.* Finally, CYS referred Mother for a third time on May 7, 2021, and ultimately, Mother began the assessment on May 20, 2021. *Id.* at 15. On July 9, 2021, Mother was referred for ten parenting sessions. *Id.* at 9-10. These sessions began on September 4, 2021, but at the time of the termination hearing, Mother had only completed three sessions. *Id.* at 9.

CYS also requested that Mother receive a mental health evaluation due to concerns regarding "extreme emotions and difficulty keeping her on track and other mental health things that [CYS] observed." N.T. 10/6/21, at 20. Underwood testified that Mother told her that she obtained an evaluation on September 23, 2021, in New York. *Id.* The CYS caseworker emailed a release to Mother so CYS could view the evaluation results, but Mother did not sign and return the release. *Id.* at 20-21. Accordingly, at the time of the hearing, CYS could not confirm that Mother obtained an evaluation. *Id.* at 21.

Regarding Mother's goal of housing stability, CYS referred Mother for emergency housing in the winter of 2020, but Mother lost this opportunity when she did not follow through with signing paperwork at the Housing

Authority. N.T., 10/6/21, at 18. Underwood testified that Mother wanted to transfer the case to New York, and a family group conference occurred on January 26, 2021, to discuss this possibility. *Id.* at 31-33. At the conference, though, Mother indicated that it would be easier for her to move to Carlisle, Pennsylvania, which is closer to Children. *Id.* at 31. Ultimately, Mother obtained appropriate housing near Children on August 4, 2021; however, Underwood indicated that Mother did not intend to stay in that home, but instead "relocat[ed] to New York." *Id.* at 19. Furthermore, regarding stability, Mother is not employed. *Id.*

Finally, CYS provided Mother with a goal to ensure Children's medical, dental, vision, and education needs were met. N.T., 10/6/21, at 21. However, Underwood stated that Mother had "not attended any appointments throughout the life of the case. She also h[ad not] talked to anybody about [C]hildren. When [Mother] talk[ed] to [her], she d[id] not ask about their well-being. She d[id] not ask about their education. She d[id] not ask about their medical needs." *Id.*

Based on the foregoing, we discern no abuse of discretion by the orphans' court in concluding that Mother's conduct warrants termination pursuant to Section 2511(a)(2). The record demonstrates that Mother's repeated and continued incapacity, neglect, or refusal to obtain stability, participate in a parenting program, visit Children regularly, involve herself in Children's medical, dental, vision, and education needs, and obtain a verified

mental health assessment, has caused Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. Further, Mother has not established that the conditions and causes of her incapacity, neglect, or refusal cannot or will not be remedied. *See In re S.C.*, 247 A.3d at 1105 (citation omitted) (reiterating that the court may properly reject as untimely or disingenuous a parent's vow to follow through on necessary services when the parent failed to co-operate with the agency or take advantage of available services during the dependency proceedings).

We turn now to Section 2511(b), which requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). "The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." *T.S.M.*, 71 A.3d at 267 (citation and quotation marks omitted). Our Supreme Court has made clear that Section 2511(b) requires the trial court to consider the nature and status of bond between a parent and child. *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993). It is reasonable to infer that no bond exists when there is no evidence suggesting the existence of one. *See In re K.Z.S.*, 946 A.2d 753, 762–63 (Pa. Super. 2008). To the extent there is a bond, the trial court must examine whether termination of parental rights will destroy a "necessary and

beneficial" relationship, thereby causing a child to suffer "extreme emotional consequences." *E.M.*, 620 A.2d at 484-85 (citation omitted).

"While a parent's emotional bond with his or her child is a major aspect of the [s]ubsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re M.M.*, 106 A.3d 114, 118 (Pa. Super. 2014) (citation omitted). "[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*. In determining needs and welfare, the court may properly consider the effect of the parent's conduct upon the child and consider "whether a parent is capable of providing for a child's safety and security or whether such needs can be better met by terminating a parent's parental rights." *L.W.*, 267 A.3d at 524.

Furthermore, our Supreme Court has stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268. The Supreme Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* Court observed, "[c]hildren are young for a scant number of years, and we

have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Here, the orphans' court "found no evidence that severing the ties between Mother and [C]hildren would have any detrimental effect on [them]. Mother had essentially abandoned her responsibilities to care for them. None of the [C]hildren had any significant bond with her. [M.G.] had stepped up to become their de facto Mother." Orphans' Court Opinion, 3/22/22, at 7. The court also stated: "[M.G.] has provided the only stable environment [Children] have ever known. While we did not believe any of [Children] would suffer any adverse effect by the termination of Mother's parental rights, we were also satisfied that if there would be, it could be easily overcome by the love and support of [M.G.]." *Id.* at 8.

The record clearly supports this conclusion. According to the CYS caseworker, Underwood, M.G. has had Children "on and off for most of [their] lives." N.T., 10/6/21, at 13. Underwood testified that she did not believe Children would suffer any detrimental effect if Mother's parental rights were terminated. *Id.* at 25-26. Underwood also averred: "When you try to talk to [Children] about [Mother], they don't really comprehend that. When I talked to them recently about how their visits went, [Children] said, [they] played with a nice lady, with the mommy lady, and it didn't seem to fully comprehend for them." *Id.* at 36. Relatedly, Witmer, the caseworker at KidsPeace, who observed the family at their home, opined that Children see M.G. and B.G. as

their parents and that Children's relationship with M.G. is loving. *Id.* at 48-49. Finally, M.G. testified that she loved Children and that she believed Children love her. *Id.* at 58. She also indicated that Children love the home and always want to do things with her and B.G. *Id.* at 58, 69. On this record, the orphans' court did not err in concluding that termination of Mother's parental rights was consistent with Children's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Our independent review of the certified record reveals no preserved non-frivolous issue that would arguably support this appeal from the decrees. Therefore, we grant Counsel's petition to withdraw from representation, and affirm the decrees terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Regarding Mother's appeals of the goal change orders, we need not dwell on this issue; given our disposition concerning the termination decrees, Mother's appeals from the orders changing Children's placement goals to adoption are moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Counsel's petitions to withdraw granted. Decrees affirmed. Appeals from goal change orders dismissed.

President Judge Emeritus Bender joins the Memorandum.

Judge McLaughlin Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/22/2022